The Honorable Michelle L. Peterson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUDLOW EXCHANGE, LLC d/b/a NOVIG,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS W. BROWN, *et al.*,<br><br>Defendants. | NO. 3:26-cv-05888-MLP<br><br>DEFENDANTS' MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR:<br>MONDAY, NOVEMBER 16, 2026 |



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTS .......... 1

A. Plaintiff Novig's Allegations .......... 1

B. Federal Regulation of Financial Derivatives .......... 3

C. Washington State Gambling Law .......... 5

III. ARGUMENT .......... 6

A. Legal Standard .......... 6

B. Novig's Complaint Should Be Dismissed Because Its Preemption Theory Fails as a Matter of Law .......... 6

1. The CEA does not expressly preempt prediction market sports betting .......... 7

2. The CEA does not impliedly preempt prediction market sports betting .......... 13

C. Novig's Complaint Should Be Dismissed Without Leave to Amend .......... 14

IV. CONCLUSION .......... 15




ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## TABLE OF AUTHORITIES

**Cases**

*Ah Sin v. Wittman*,
198 U.S. 500 (1905)........................................................................................................ 9

*Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago,*
977 F.2d 1147 (7th Cir. 1992) ....................................................................................... 13

*Arizona v. United States*,
567 U.S. 387, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012)................................................. 13

*Blue Lake Rancheria v. Kalshi, Inc.*,
--- F. 4th ----, No. 25-7504, 2026 WL 2728466 (9th Cir. Sept. 16, 2026) ............................ 7

*Bond v. United States*,
572 U.S. 844 (2014)........................................................................................................ 9

*CFTC v. Wisconsin*,
No. 26-C-749, 2026 WL 2474512 (E.D. Wis. July 29, 2026)....................................... 12, 14

*Coinbase Financial Markets, Inc. v. Nessel*,
No. 25-14092, 2026 WL 2295184 (E.D. Mich. Aug. 7, 2026)...................................... 12, 14

*Coinbase Financial Markets, Inc., v. Raoul*,
No. 1:25-CV-15406, 2026 WL 2969682 (N.D. Ill. Oct. 2, 2026) ................................. 12, 14

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ............................................................................................ 6

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018)................................................... 9

*KalshiEX LLC v. Cafferelli*,
No. 25-CV-2016, 2026 WL 2294589 (D. Conn. Aug. 10, 2026).................................. 12, 14

*KalshiEX LLC v. Johnson*,
No. CV-26-1715, 2026 WL 1223373 (D. Ariz. May 5, 2026)........................................... 12

*KalshiEX LLC v. Orgel*,
No. 3:26-cv-00034, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026) .................................. 12

*KalshiEX LLC v. Schuler*,
No. 26-3196, 2026 WL 2884087 (6th Cir. Sept. 25, 2026).......................................... passim

*KalshiEX LLC v. Williams*,
No. 25 Civ. 8846, 2026 WL 2017466 (S.D.N.Y. July 13, 2026) ........................................ 14



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*KalshiEX LLC, v. Cox*,
No. 2:26-CV-00151-RJS-CMR, 2026 WL 2241564 (D. Utah Aug. 4, 2026)....................... 14

KalshiEX v. Assad,
No. 25-7516, --- F. 4th ----, 2026 WL 2543846 (9th Cir. Aug. 28, 2026) ..................... passim

*KalshiEX, LLC v. Flaherty*,
172 F.4th 220 (3d Cir. 2026) ........................................................................... 12, 14

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024)......................................................... 9

*N. Am. Derivatives Exch., Inc. v. Nevada on Rel. of Nevada Gaming Control Bd.*,
815 F. Supp. 3d 1169 (D. Nev. 2025)....................................................................... 12

*United States v. Minnesota*,
No. 26-CV-2661, 2026 WL 2150211 (D. Minn. July 27, 2026) .......................................... 12

*QCX LLC v. Nessel*,
No. 1:26-CV-710, 2026 WL 1895958 (W.D. Mich. June 17, 2026).............................. 12, 14

*Rousso v. State*,
204 P.3d 243 (Wash. Ct. App. 2009)........................................................................... 5

*State of Washington v. KalshiEx LLC*,
No. 26-3106 (9th Cir. May 21, 2026)........................................................................... 2

*State of Washington v. KalshiEX, LLC*,
No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026) .................................... 2

*Vasquez v. Los Angeles Cnty.*,
487 F.3d 1246 (9th Cir. 2007) ........................................................................... 6, 14

**<u>Statutes</u>**

7 U.S.C. § 1a(47)(A)(ii)........................................................................................... 4

7 U.S.C. § 2(a)(1)(A) ............................................................................................. 3, 7

7 U.S.C. § 2(e) ...................................................................................................... 10

7 U.S.C. § 7a-2(c)(5)(C) ........................................................................................... 4

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010,
Pub. L. 111-203, 124 Stat. 1376 (2010) ......................................................... 4, 8, 11

Laws of 2006, ch. 290, § 1.......................................................................................... 5

Wash. Rev. Code § 9.46.010 ...................................................................................... 5



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ........ 1, 6

**Regulations**

17 C.F.R. § 40.11 ........ 8

17 C.F.R. § 40.11(a) ........ 4

Event Contracts,
89 FR 48968 (proposed June 10, 2024) ........ 8

Policy Statement Concerning Swap Transactions, 54 FR 30694-01 (1989) ........ 4



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# I. INTRODUCTION

Plaintiff Ludlow Exchange, LLC d/b/a Novig filed this action seeking a declaration from this Court that Washington state gambling law is preempted by the Commodity Exchange Act (CEA) as applied to its online sports betting operations. The Ninth Circuit Court of Appeals recently held, under substantively identical circumstances, that the CEA does not preempt state gambling law. Accordingly, Novig's Complaint fails to state a legally cognizable claim for relief and should be dismissed.

Novig is a so-called "prediction market" that offers sports betting online. Over the past year, courts nationwide have grappled with the preemption issue raised by Novig's Complaint. In *KalshiEX v. Assad*,[1] the Ninth Circuit conclusively resolved those issues in this Circuit, holding that the CEA neither expressly nor impliedly preempts state gambling law as to sports betting on prediction markets. Moreover, the Ninth Circuit's ruling is in line with the increasing weight of authority among courts to consider this issue, including a more recent ruling by the Sixth Circuit Court of Appeals. Accordingly, Defendants respectfully request that the Court dismiss Novig's Complaint under Fed. R. Civ. Proc. 12(b)(6), without granting leave to amend because any amendment would be futile.

# II. FACTS

## A. Plaintiff Novig's Allegations

Novig has pled a single claim for relief: "Preemption by the Commodity Exchange Act." Dkt. 1 (Complaint) at 29. Novig seeks a declaration that the CEA preempts Washington state gambling law as to Novig's sports betting operations, and an injunction prohibiting the Defendants from enforcing state gambling laws against it. *Id.* at 43-44.

On June 16, 2016, the Commodity Futures Trading Commission (CFTC) designated Novig as a "contract market." Complaint ¶ 6. As discussed in Part II.B., *infra*, the CFTC is a federal agency that, pursuant to the CEA, has regulatory jurisdiction over trading in financial

[1] No. 25-7516, --- F. 4th ----, 2026 WL 2543846 (9th Cir. Aug. 28, 2026).



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

derivatives. CFTC-designated contract markets (DCMs) are exchanges for trading specific types of financial contracts that operate under CFTC rules. Novig, like other prediction markets, creates and lists so-called "event contracts" for trading on its exchange. *Id.* ¶ 3.

Novig provides only sports-based event contracts, which it offers to customers across the United States, including in Washington. *Id.* ¶ 4. Novig alleges that such contracts "are derivative instruments that enable parties to trade on their predictions about whether a future event will occur." *Id.* In the sports context, this means placing money on the outcome of a sports-related event. *Id.* ¶ 33. Novig provides, as an example, a "contract" on "whether the Seattle Seahawks will win the Super Bowl." *Id.*

As Novig notes, earlier this year Defendant Nicholas W. Brown, the Washington Attorney General, filed a civil enforcement action against another prediction market, KalshiEX, LLC, alleging that Kalshi's event contracts violate state gambling law. *Id.* ¶ 8. On July 20, the Washington Superior Court granted the Attorney General's motion for a preliminary injunction enjoining Kalshi from continuing to offer event contracts in certain categories, including sports, in Washington. *Id.*[2]

Novig brings this suit with the express intent of forestalling Defendants from taking similar enforcement action against it. Novig's requests for declaratory and injunctive relief are based solely on its assertions that the CEA preempts state gambling law, and that it is subject only to the jurisdiction of the CFTC. As discussed in detail below, the Ninth Circuit and numerous other courts have rejected that position. *See* Part III.B., *infra*.

[2] Prior to the briefing and entry of the preliminary injunction in state court, Kalshi removed the State's enforcement action to this Court, which then remanded the case to the superior court for lack of subject matter jurisdiction. *State of Washington v. KalshiEX, LLC*, No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026), *appeal filed* May 14, 2026 (26-3106). That remand order is subject to a pending appeal by Kalshi to the Ninth Circuit. After filing its appeal, Kalshi requested an emergency stay of remand from the Ninth Circuit, which was denied. *See* Order, *State of Washington v. KalshiEx LLC*, No. 26-3106, Dkt. No. 19.1 (9th Cir. May 21, 2026).



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**B. Federal Regulation of Financial Derivatives**

The CEA was enacted in 1936 to regulate derivatives trading in commodities. A derivative is a "financial instrument whose value depends on or is derived from the performance of a secondary source, such as an underlying bond, currency, or commodity." *Assad*, 2026 WL 2543846, at *3. Derivatives are used to hedge financial risk. *KalshiEX LLC v. Schuler*, --- F. 4th ----, No. 26-3196, 2026 WL 2884087, at *2 (6th Cir. Sept. 25, 2026).

In 1974, Congress established the CFTC as an independent federal agency to regulate derivatives. *Id.* at *2. Congress amended the CEA, granting "exclusive jurisdiction" to the CFTC "with respect to" agreements and transactions "involving swaps or contracts of sale of a commodity for future delivery." 7 U.S.C. § 2(a)(1)(A). Notwithstanding this grant of "exclusive" jurisdiction, Congress also included savings clauses providing that the CEA does not "supersede or limit the jurisdiction . . . conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State," or restrict those same regulatory authorities "from carrying out their duties and responsibilities in accordance with such laws," and that the jurisdictional grant to the CFTC does not "supersede or limit the jurisdiction conferred on courts of the United States or any State." *Id.*

In 1982, Congress again amended the CEA, requiring futures to be traded on "centralized exchanges" known as DCMs. *Schuler*, 2026 WL 2884087, at *2. DCMs are subject to CFTC oversight. Under CFTC rules, DCMs may self-certify in writing that the contracts they offer comply with the law and applicable regulations. *Id.* Once a DCM files a self-certification with the CFTC, it can immediately start offering the self-certified contracts. *Id.*

In the 1980s, a new type of derivatives contract known as a "swap" emerged, defined by the CFTC as: "[A]n agreement between two parties to exchange a series of cash flows measured by different interest rates, exchange rates, or prices with payments calculated by reference to a principal base." CFTC, *Policy Statement Concerning Swap Transactions*, 54 FR 30694-01



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

(1989). More generally, a swap "is a transaction where two parties agree to exchange payments to mitigate financial risk." *Schuler*, 2026 WL 2884087, at *2.

Unlike futures and options contracts, swaps were originally traded almost entirely in unregulated "over-the-counter" markets, rather than on CFTC-regulated DCMs. *Schuler*, 2026 WL 2884087, at *3. By the early 2000s, swaps trading had become pervasive and, due to the lack of regulatory oversight, swaps trading "spiraled out of control" and "contributed significantly to the global financial crisis in 2008." *Id.*

In response to the financial crisis, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank) to "promote the financial stability of the United States by improving accountability and transparency in the financial system." Pub. L. 111-203, 124 Stat. 1376 (2010). Dodd-Frank amended the CEA to place swaps under the CFTC's jurisdiction, and provided an extensive, six-part definition of swap. *Assad*, 2026 WL 2543846, at *3. Novig and other prediction markets rely on one particular subpart, which defines "swap" as "any agreement, contract, or transaction . . . that provides for any purchase, sale, payment, or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence"—*i.e.*, event contracts. *Id.* (citing 7 U.S.C. § 1a(47)(A)(ii)). *See* Complaint ¶¶ 93-94.

Dodd-Frank also created a Special Rule under the CEA, giving the CFTC the power to "determine" that certain swaps are "contrary to the public interest" and therefore cannot be listed on a DCM, if the swap involves "activity that is unlawful under any Federal or State law, terrorism, assassination, war, gaming, or other similar activity." *Id.* (citing 7 U.S.C. § 7a-2(c)(5)(C)(i)–(ii)). Soon after, the CFTC adopted a regulation categorically prohibiting swaps based on "an excluded commodity," that "involves, relates to, or references," among other things, "gaming." *Id.* at *4 (citing 17 C.F.R. § 40.11(a)).



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**C. Washington State Gambling Law**

Washington has "from its inception considered gambling to be an activity with significant negative effects and has always strictly regulated gambling in order to minimize those effects." *Rousso v. State*, 204 P.3d 243, 250 (Wash. Ct. App. 2009), *aff'd* 239 P.3d 1084 (2010). The Constitution of 1889 prohibited all gambling activities on state lands, and Washington continues to tightly regulate gambling to this day. *Id.* at 250-51.

In 1973, Washington enacted the Gambling Act, Wash. Rev. Code 9.46, which prohibits all gambling unless specifically exempted. Illegal gambling, professional gambling, bookmaking, online gambling, and sports wagering are specifically defined, and prohibited. Wash. Rev. Code §§ 9.46.0237, .0269, .0213, .240, .038. The Act's legislative declaration states:

> The public policy of the state of Washington on gambling is … to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.

Wash. Rev. Code § 9.46.010.

In 2006, the Washington state legislature amended the Gambling Act to explicitly include online gambling. The amending legislation included an express statement of purpose:

> It is the policy of this state to prohibit all forms and means of gambling, except where carefully and specifically authorized and regulated. With the advent of the internet and other technologies and means of communication that were not contemplated when . . . the gambling act was enacted in 1973 . . . it is appropriate for this legislature to reaffirm the policy prohibiting gambling that exploits such new technologies.

Laws of 2006, ch. 290, § 1. The 2006 amendment makes clear that "[i]nternet gambling in the state of Washington is effectively banned." *Rousso*, 239 P.3d at 75. It is for precisely this reason that Novig seeks to enjoin Defendants from enforcing Washington state gambling law against it. Complaint ¶ 117.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## III. ARGUMENT

### A. Legal Standard

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleging such a theory. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). "[C]onclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

### B. Novig's Complaint Should Be Dismissed Because Its Preemption Theory Fails as a Matter of Law

Novig's Complaint rests entirely on the legal theory that the CEA preempts Washington state gambling law as applied to Novig's online sports betting operations. Courts nationwide have grappled with this question over the past year, with the increasing majority finding no preemption. Two of three Circuit Courts of Appeal, a clear majority of U.S. District Courts to consider the issue, and several state courts—including Washington—have all held that states may enforce their gambling laws against so-called prediction markets and are not preempted by the CEA.

On August 28, 2026, the Ninth Circuit weighed in, holding that the CEA does not preempt state gambling law as to sports-related betting offered by prediction market Kalshi. *Assad*, 2026 WL 2543846 at *17. As Novig alleges, there is no distinction between Novig's sports-related event contracts and those offered by Kalshi in *Assad*. Accordingly, *Assad* is binding in this Circuit, and Novig's Complaint must be dismissed. Moreover, even if the Ninth Circuit grants Kalshi's pending request for rehearing *en banc*, an *en banc* panel is unlikely to reach a different conclusion given that *Assad* is in line with the weight of authority on this issue.

Novig alleges that the CEA preempts Washington state gambling law as a matter of both express and implied (field and conflict) preemption. Complaint ¶ 90. Federal law preempts state law only if (1) Congress enacts a statute that expressly preempts state law, (2) Congress occupies



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

the entire field of regulation, or (3) state law conflicts with federal law, making compliance with both an impossibility or such that state law presents an obstacle to the accomplishment of the federal purpose. Prediction market Kalshi made precisely the same preemption arguments in *Assad* with respect to its sport-related event contracts, each of which the Ninth Circuit considered and rejected in turn. Numerous decisions are in accord.

**1. The CEA does not expressly preempt prediction market sports betting**

The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps" that are "traded or executed on a market designated" by the CFTC, subject to exemptions. 7 U.S.C. § 2(a)(1)(A). In *Assad*, the Ninth Circuit held that sports-related event contracts are not "swaps" and therefore state gambling law is not expressly preempted as to such event contracts. *Assad*, 2026 WL 2543846, at *10-16; *see also Blue Lake Rancheria v. Kalshi, Inc.*, --- F. 4th ----, No. 25-7504, 2026 WL 2728466, at *13 (9th Cir. Sept. 16, 2026) (different panel citing *Assad* and concluding prediction market sports bets are not "swaps").

Novig relies upon one particular sub-part of the CEA definition of "swap," which includes "any agreement, contract, or transaction . . . that provides for any purchase, sale, payment, or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." *See* Part II.B., *supra*. Kalshi relied upon the same definitional subpart in *Assad*. 2026 WL 2543846, at *8. The Ninth Circuit considered Kalshi's arguments—the same that Novig alleges here—and conclusively rejected them. *Id.* at *10-14.

Central to the court's reasoning was the commonsense and obvious point that, from a customer's point of view, there is no difference between sports event contracts and sports gambling. For example:

> A customer at Caesars Sportsbook can place a sports bet on the Las Vegas Raiders winning a game by over 7.5 points, and if that happens, win a higher payout than the amount wagered. On the Kalshi app, that same customer can buy an event



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

> contract based on the Las Vegas Raiders winning a game by over 7.5 points, and if that happens, receive a higher payout than the amount wagered.

*Id.* at *10. In either scenario, noted the court, the customer's actions fit the ordinary, plain meaning definitions of "wager" and "gambling contract." *Id.* Accordingly: "The substance of the sports event contracts offered on Kalshi's DCM is sports gambling, regardless of whether Kalshi calls them swaps." *Id.*

The court also noted that interpreting the CEA definition of "swap" to include sports event contracts would "result[] in a reading of the CEA that gives the CFTC regulatory authority over sports betting," which is "an area that has long been regulated by the States and Tribes." *Id.* at *14. As discussed above, the "swap" definition was added to the CEA in 2010 by Dodd-Frank, which was passed in response to the 2008 financial crisis. *See* Part II.B., *supra*. Dodd-Frank, however, imposed financial regulations to reduce risk to the national economy; it was not a bill to regulate gambling. Sports betting appears nowhere in the bill. It was not plausible, concluded the court, that Congress intended to make such sweeping changes to national gambling regulation without stating an intent to do so:

> To be sure, "Congress can regulate sports gambling directly" should it choose to do so. But Congress has not done so directly, or indirectly through the CFTC . . . The Dodd-Frank Wall Street Reform Act cannot be read as a direct (or indirect) regulation of sports gambling, and the CFTC is not a national gambling regulator. No one suggested it was until over a decade after the law was passed.

*Id.* (citations omitted).

Indeed, until last year when prediction markets started making this argument, no one interpreted Dodd-Frank in this manner. As noted above, the CFTC promulgated regulations prohibiting event contracts that involve gaming, 17 C.F.R. § 40.11. *See* Part II.B., *supra.* And as recently as 2024, the agency proclaimed that "gambling is overseen by state regulators," and that the CFTC lacks the "statutory mandate" and specialized expertise to regulate gambling. 89 FR 48968-01. "The Commission," the agency flatly stated, "is not a gaming regulator." *Id*. at 48982-



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

83. The CFTC's more recent about-face does not change the analysis. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 401 (2024) (agencies have "no special competence" to interpret statutes, especially when arrogating to themselves more authority).

Concerning the specific statutory language at issue, the court declined to interpret the term "event" (in the phrase "dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence") in isolation and adopt its broadest meaning of simply "something that happens." *Assad*, 2026 WL 2543846, at *8. A statute's meaning, noted the court, "does not always turn solely on the broadest imaginable definitions of its component words." *Id.* at *9 (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018)). "The statute's language, structure, subject matter, context, and history are all factors" the court should consider. *Assad*, 2026 WL 2543846, at *8.

The "relevant backdrop" here includes state and federal gambling laws, "which weighs against giving the words in [the statutory definition] the broadest possible reading because . . . sports event contracts have the hallmarks of sports betting . . . [a]nd sports betting is a quintessential form of gambling." *Id.* Congress "has spoken on gambling repeatedly, deliberately, and specifically." *Id.* "It is difficult, then" continued the court, "to conclude that Congress intended to upend its decades of careful regulation of gambling based on broad definitions of the words used in a Wall Street Reform Bill." *Id.* at *10; *see also Bond v. United States*, 572 U.S. 844, 857-59 (2014) (requiring "clear statement" when legislation affects the "usual constitutional balance of federal and state powers" in "areas of traditional state responsibility"); *Ah Sin v. Wittman*, 198 U.S. 500, 505-06 (1905) ("The suppression of gambling is concededly within the police powers of a state.").

The *Assad* court also considered and rejected the argument that sports event contracts are "associated with a potential financial, economic, or commercial consequence" within the meaning of the "swap" definition because sports event outcomes are "connected with financial



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

consequences" for "stakeholders[ ] team sponsors, advertisers, television networks, franchises, local communities," etc. *Id.* at *11. Novig makes exactly the same argument. Complaint ¶ 96. Accepting this view, concluded the court, would require reading the statute "so expansively as to include any conceivable downstream economic consequence" which would "render the definition of swap so broad as to be meaningless." *Assad*, 2026 WL 2543846, at *12.

Adopting a broad reading of "swap" that encompasses sports betting "poses another problem—it lacks a limiting principle." *Id.* at 11. The CEA "makes it unlawful to enter into 'swaps' outside of a DCM," meaning if sports event contracts are "swaps," then anyone placing a sports bet off-DCM—such as at a regulated casino or sportsbook—"would be violating the CEA." *Id.* Such an absurd outcome was yet another reason the Ninth Circuit rejected the argument Novig attempts to advance here. *See also Schuler*, 2026 WL 2884087, at *14 ("[B]ecause the trading of swaps outside DCMs is illegal under 7 U.S.C. § 2(e), any individual who engages in gambling outside of a DCM would commit a felony were we to take the definition of swaps to its logical extreme.").

The surrounding statutory language also supports a narrower reading, as the other subparts of "swap" refer "almost exclusively to financial measures, indices, or instruments." *Assad*, 2026 WL 2543846, at *12. Along the same lines, the Ninth Circuit relied upon the principle of statutory construction that "a word is known by the company it keeps," noting that accompanying words in the definition of "swap" include agreements, contracts, or transactions that provide for the exchange of payments based on interest rates, currencies, commodities, or other financial interests, and that function by transferring risk associated with fluctuating values. *Id.* at *10. Sports event contracts "are unlike these transactions":

> [S]ports event contracts do not help institutions or investors hedge against risk; they create risk, largely for ordinary consumers, where none previously existed.

*Id.*



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

The Ninth Circuit also specifically addressed the argument that the CEA's Special Rule shows Congress intended to give the CFTC exclusive jurisdiction over sports betting. Novig, again, makes the same argument. Complaint ¶ 120. As set forth above, the Special Rule authorizes the CFTC to prohibit contracts involving illegal activity, terrorism, assassination, war, gaming, or other similar activity. *See* Part II.B., *supra*. But allowing the CFTC to prohibit certain types of contracts in the public interest is not the same thing as giving the CFTC exclusive jurisdiction over the subject matter of those contracts. The Special Rule, concluded the court, thus "did not give the CFTC any more preemptive authority over gaming than it gave the CFTC authority over terrorism or assassination." *Assad*, 2026 WL 2543846, at *13.

Finally, accepting the argument "that Congress delegated its power to regulate gambling (a power traditionally exercised by the States and Tribes) to the CFTC when it passed Dodd-Frank would create a major-questions problem." *Id.* at *14. Sports gambling "involves 'billions of dollars' and affects 'millions of people,'" and states have "longstanding regulatory authority, given the significant impact gambling has on society." *Id.* at *15 (citation omitted). As a result, "stakes are high when it comes to gambling regulation." *Id.* Thus, "it is implausible that Congress intended to allow the CFTC to engage in the national regulation of gambling based on expansive definitions of the words 'event' and 'associated with' in [Dodd-Frank]." *Id.*

A clear majority of courts that have considered the issue to date have reached the same conclusion as *Assad*: sports event contracts are not "swaps" within the meaning of the CEA. The most recent appellate decision held, citing *Assad*, that "sports-event contracts are not 'swaps'" and "thus that federal law does not preempt application of the States' gambling laws." *KalshiEX LLC v. Schuler*, No. 26-3196, 2026 WL 2884087, at *18 (6th Cir. Sept. 25, 2026). And unlike Kalshi, Novig *only* offers sports betting—it does not offer event contracts of any other type. Complaint ¶ 4. Given this, Novig's claims must be dismissed.

Although Novig carefully avoids using words like "bet" and "wager" to describe its event contracts, the Ninth Circuit has noted that "[t]he substance of . . . sports event contracts . . . is



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

sports gambling" because "the payout depends on the performance of a sports team or a player." *Assad*, 2026 WL 2543846, at *10. The only appellate court to reach a contrary conclusion, the Third Circuit in *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 227 (3d Cir. 2026), generated a vigorous dissent, and both the Ninth and Sixth Circuits considered and unanimously rejected the Third Circuit panel's reasoning. *Assad*, 2026 WL 2543846, at *11; *Schuler*, 2026 WL 2884087, at *15.

Numerous U.S. District Courts have likewise concluded that prediction market event contracts do not fall within the statutory definition of "swap." *See KalshiEX LLC v. Cafferelli*, No. 25-CV-2016, 2026 WL 2294589, at *10 (D. Conn. Aug. 10, 2026) ("Because Kalshi's sports-event contracts are not swaps under the CEA, they do not fall within the CFTC's exclusive jurisdiction, and the CEA does not preempt state regulation of those contracts."); *Coinbase Financial Markets, Inc. v. Nessel*, No. 25-14092, 2026 WL 2295184, at *10 (E.D. Mich. Aug. 7, 2026) ("Coinbase fails to show that sports event contracts qualify as swaps under the CEA."); *CFTC v. Wisconsin*, No. 26-C-749, 2026 WL 2474512, at *11 (E.D. Wis. July 29, 2026) ("[T]his court finds that the CFTC has not shown that it is likely to prevail on its argument that the CEA's definition of 'swaps' covers the event contracts offered by entities such as Kalshi."); *QCX LLC v. Nessel*, No. 1:26-CV-710, 2026 WL 1895958, at *8 (W.D. Mich. June 17, 2026) ("Plaintiff's sports-related products do not fall within the statutory definition of 'swap.'"); *N. Am. Derivatives Exch., Inc. v. Nevada on Rel. of Nevada Gaming Control Bd.*, 815 F. Supp. 3d 1169, 1187 (D. Nev. 2025) ("[B]ased on the statutory language and Congressional intent, [the plaintiff]'s contracts on the outcome of live events are not 'swaps.'"). *But see Coinbase Financial Markets, Inc., v. Raoul*, No. 1:25-CV-15406, 2026 WL 2969682 (N.D. Ill. Oct. 2, 2026); *United States v. Minnesota*, No. 26-CV-2661, 2026 WL 2150211 (D. Minn. July 27, 2026).[3]

[3] Two additional U.S. District Court decisions Novig cites in the Complaint—*KalshiEX LLC v. Johnson*, 2026 WL 1223373 (D. Ariz. May 5, 2026), and *KalshiEX LLC v. Orgel*, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026)—are no longer good law following the decisions of the Ninth and Sixth Circuits in *Assad* and *Schuler* respectively.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

As a final point concerning express preemption, several courts—most notably the Sixth Circuit in *Schuler*—have held that, even if sports event contracts fell within the CEA definition of "swap," the CEA does not expressly preempt state gambling law in any event. 2026 WL 2884087, at *20-23. This was not the holding in *Assad*, however, and therefore is not the law in this Circuit.[4]

**2. The CEA does not impliedly preempt prediction market sports betting**

Novig—like Kalshi in *Assad*—fares no better under the implied preemption theories of field and conflict preemption. Field preemption may apply "when Congress enacts a regulatory scheme so comprehensive that it 'has left no room for States to regulate.'" *Assad*, 2026 WL 2543846, at *17 (quoting *Arizona v. United States*, 567 U.S. 387, 400, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012)). To determine whether field preemption applies, the Court must first identify the relevant field. Novig alleges that "[t]he field here is not gambling. It is the regulation of trading on federally designated contract markets[.]" Complaint ¶ 109. The Ninth Circuit, however, reached precisely the opposite conclusion in *Assad*:

> While the CEA preempts the field of regulating swaps traded on a DCM, § 2(a)(1)(A), the Nevada state laws and regulations at issue . . . regulate "gaming" activity," . . . a field which the CEA has not preempted. Congress has explicitly not occupied the field of gambling, declaring that "the States should have the primary responsibility for determining what forms of gambling may legally take place within their borders."

*Id.* at *17 (citations omitted). The court accordingly held that the CEA does not preempt the field of all state gambling regulations, and that field preemption therefore does not apply. *Id.; see also Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago,* 977 F.2d 1147, 1155 (7th Cir. 1992) (CEA savings clauses "tell[] us that Congress did not intend to preempt the field of futures trading"). Again, Novig only offers sports betting, and the CEA does not preempt this field.

---

[4] To preserve the argument for appeal, the State notes that even if *Assad* is vacated, the Sixth Circuit's decision in *Schuler* is correct: even if sports event contracts are considered "swaps" under the CEA, the CEA does not preempt state gambling laws.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Conflict preemption "arises when state law conflicts with a federal statute." *Assad*, 2026 WL 2543846, at *16 (citation omitted). Novig alleges that the CEA preempts Washington state gambling law because compliance with both state and federal law is impossible, and because state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Complaint ¶ 116. In *Assad*, Kalshi likewise "argue[d] that it is impossible to comply with Nevada law and the CEA, and that Nevada law poses an obstacle to the CEA's purposes." *Assad*, 2026 WL 2543846, at 16. The Ninth Circuit, again, rejected this argument, finding that Kalshi had not shown that complying with Nevada law would jeopardize its status as a designated contract market with the CFTC or cause any other conflict justifying preemption. *Id.*

As with express preemption, numerous other decisions, including the Sixth Circuit's decision in *Schuler*, have rejected field and conflict preemption arguments made by prediction markets. *See Schuler*, 2026 WL 2884087, at *23-28; *Cafferelli*, 2026 WL 2294589, at *11-14; *Coinbase*, 2026 WL 2295184, at *11-15; *KalshiEX LLC, v. Cox*, No. 2:26-CV-00151-RJS-CMR, 2026 WL 2241564, at *11-14 (D. Utah Aug. 4, 2026); *CFTC*, 2026 WL 2474512, at *12-13; *KalshiEX LLC v. Williams*, No. 25 CIV. 8846, 2026 WL 2017466, at *6-9 (S.D.N.Y. July 13, 2026); *QCX*, 2026 WL 1895958, at *10-13. *But see Flaherty*, 172 F.4th at 227; *Raoul*, 2026 WL 2969682.

**C. Novig's Complaint Should Be Dismissed Without Leave to Amend**

Dismissal without leave to amend is proper where it is clear that the Complaint cannot be saved by amendment. *Vasquez*, 487 F.3d at 1258. Such is the case here. Novig's Complaint rests entirely upon the theory that the CEA preempts state gambling law from applying to sports betting—a theory that has been rejected by the Ninth Circuit and a large majority of courts to consider this issue. Granting Novig leave to amend would be futile, as it cannot cure its failed preemption arguments. *See id.* (recognizing futility of amendment as a proper basis for dismissal without leave to amend). Accordingly, the Court should dismiss without leave to amend.



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## IV. CONCLUSION

For all the foregoing reasons, Novig's Complaint fails to state a claim upon which relief can be granted and should be dismissed without leave to amend.

DATED this 19th day of October, 2026.

*I certify that this memorandum contains 4,894 words, in compliance with the Local Civil Rules*

*s/ Julia K. Doyle*
ANDREA ALEGRETT, WSBA No. 50236
JULIA K. DOYLE, WSBA No. 43993
BEN BRYSACZ, WSBA No. 54683
MATT GEYMAN, WSBA No. 17544
SEANN COLGAN, WSBA No. 38769
TERRENCE MANGAN, WSBA No.65269
CLAIRE MCNAMARA, WSBA No. 50097
Assistant Attorneys General
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
andrea.alegrett@atg.wa.gov
julie.doyle@atg.wa.gov
ben.brysacz@atg.wa.gov
matt.geyman@atg.wa.gov
seann.colgan@atg.wa.gov
tk.mangan@atg.wa.gov
claire.mcnamara@atg.wa.gov
*Attorneys for Defendant Nicholas W. Brown in his official capacity as Attorney General for the State of Washington*

and

*s/ Suzanne Becker*
SUZANNE BECKER, WSBA No. 40546
MATTHEW KERNUTT, WSBA No. 35702
Assistant Attorneys General
PO Box 40100
Olympia, WA 98504-0100
suzanne.becker@atg.wa.gov

matthew.kernutt@atg.wa.gov
*Attorneys for Defendants Tina Griffin, Sarah Lawson, Alicia Levy, Noah Skartvedt, and Michael Charles in their official capacities with the Washington State Gambling Commission*

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing to be served on the following parties via the following methods:

| | |
|---|---|
| **Heidi Bradley**<br>**Bradley Bernstein Sands LLP**<br>**2800 First Avenue, Suite 326**<br>**Seattle, WA 98121**<br>**hbradley@bradleybernstein.com** | ☐Legal Messenger<br>☐First-Class Mail, Postage Prepaid<br>☐Certified Mail, Receipt Requested<br>☒E-Service<br>☒E-mail |
| **Sullivan & Cromwell LLP**<br>**Benjamin R. Walker**<br>**Ann-Elizabeth Ostrager**<br>**John J. Liolos**<br>**Jason P. Barnes**<br>**125 Broad Street**<br>**New York, NY 10004**<br>**walkerb@sullcrom.com**<br>**ostragerae@sullcrom.com**<br>**liolosj@sullcrom.com**<br>**barnesjas@sullcrom.com** | ☐Legal Messenger<br>☐First-Class Mail, Postage Prepaid<br>☐Certified Mail, Receipt Requested<br>☒E-Service<br>☒E-mail |
| **Rishabh Bhandari**<br>**1700 New York Avenue, N.W.**<br>**Washington, D.C., 20006**<br>**bhandarir@sullcrom.com** | ☐Legal Messenger<br>☐First-Class Mail, Postage Prepaid<br>☐Certified Mail, Receipt Requested<br>☒E-Service<br>☒E-mail |

I certify, under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

DATED this 19th day of October, 2026, at Brier, Washington.

*s/ Julia K. Doyle*
Julia K. Doyle, WSBA No. 43993
Assistant Attorney General



ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744